him. "[A] state cannot be held to have violated due process requirements when it has made procedural protection available and the plaintiff has simply refused to avail himself of them". Dusanek v. Hannon, 677 F.2d 538, 543 (7th Cir. 1982). A due process violation "is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process." Zimerman v. Burch, 494 U.S. 113, 126 (1990). If there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants. See Dwyer v. Regan. 777 F.2d 825, 834-35 (2d Cir. 1985), modified on other grounds, 793 F.2d 457 (2d Cir. 1936); McDaniels v. Flick, 59 F.3d 446, 460 (3d Cir. 1995); See also Parratt v. Taylor, 451, U.S. 527, 543 (1981); Bohn v. County of Dakota, 772 F.2d 1433, 1441 (8th Cir. 1985); Alvin v. Suzuki et al, 227 F.3d 107, 116 (3rd Cir. 2000). Riggins v. Board of Regents, 790 F.2d 707, 711-712 (8th Cir. 1986). See also UDC Chairs Chapter, American Association of University Professors v. Board of Trustees of the University of the District of Columbia, 56 F.3d 1469 (D.C. Cir. 1995) (Because the faculty chairs had not used the University Grievance System to challenge the denial of summer pay contracts, any lack of due process protections was the result of their own inaction); Weinrach v. Park City, 751 F.2d 357, 360 (10th Cir. 1984). Correa v. Nampa School Dist. No. 131, 645 F.2d 814, 817 (9th Cir. 1981); Stewart v. Bailey, 556 F.2d 281, 285-86 (5th Cir. 1977). Therefore, plaintiff's due process rights have not been violated.

### 3.    Plaintiff's Claim Is Barred By The Doctrine Of Qualified Immunity

Defendants submit they are entitled to qualified immunity as there is no clearly established law setting forth the property right which plaintiff alleges in the particularized sense. No law has clearly established that a property right exists such as to mandate that an institution place a researcher on a research proposal which requests that the federal government award

discretionary funds to the institution. "The legal issues in this case are not readily discernable and the appropriate conclusion to each is not so clear that the officials should have known that their actions violated [plaintiff's] rights." Vaga v. S.U.N.Y. Board of Trustees, 67 F. Supp. 2d 324, 342 (S.D.N.Y. 1999).

### D.    FOURTH CAUSE OF ACTION - LANHAM ACT

Plaintiff alleges that the defendants UConn, UCHC, Deckers, Berlin and Wikel, "deprived] him of and/or misappropriate[d] his ownership rights to a body of research data developed from his scientific studies in tick vaccine research that he developed, at time, in collaboration with the defendant, Stephen Wikel, in violation of the Lanham Act, Title 15 U.S.C. § 1125(a) et seq." (FSC ¶6). The essence of plaintiff's claim is that defendants attempted to foster the erroneous impression that defendant Wikel was the sole owner and originator of certain intellectual properties in which plaintiff possessed an ownership interest, (FSC ¶421-422), i.e. that defendants have made false representations in commerce or false promotion and/or false designations of origin of the work. [12]

#### 1.    This Cause Of Action Is Barred By Sovereign Immunity

In College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board, 119 S. Ct. 2219 (1999), the U.S. Supreme Court invalidated a provision of the Trademark Remedy Clarification Act (TRCA), Pub. Law No. 102-542, 106 Stat. 3567 (1992), that amended § 43(a) of the Lanham Act to provide that states could be sued under that law for using false descriptions or making false representations in commerce (15 U.S.C. § 1125 (a)), and that also

---

[12]  15 U.S.C. § 1125 is entitled "False designations of origin, false descriptions, and dilution forbidden." A claim of misappropriation or false designation of origin is but a form of unfair competition. See Federal – Mogul-Bower Bearings, Inc. v. Azoff, 313 F.2d 405, 409 (6th Cir. 1963); Metric & Multistandard Components Corporation v. Metric's, Inc., 635 F.2d 710, 713 (8th Cir. 1980).

provided that Eleventh Amendment Immunity defenses would not be effective (15 U.S.C. § 1122). The Court rejected the argument that the TRCA had been enacted under section 5 of the Fourteenth Amendment, which would provide a valid basis for abrogation of immunity order. Seminole Tribe of Florida v. Florida, et al, 571 U.S. 44, 116 S. Ct. 1114 (1996). The Court held that the TRCA was not a proper remedial or preventative statute within the proper scope of Section 5 of the Fourteenth Amendment.[13] The Court further held that Florida had not waived its sovereign immunity by engaging in activities regulated by the Lanham Act. See also Florida Prepaid Postsecondary Education Expense Board v. College Savings Bank, 119 S. Ct. 2199 (1999).

The claims for damages brought against UConn, UCHC and its officials in their official capacities are, in effect, actions against the state as sovereign. Fetterman v. University of Connecticut, 192 Conn. 539, 550 (1984); Banerjee v. Roberts, 641 F. Supp. 1093 (D. Conn. 1986); Kirkendall v. University of Connecticut Health Center, 205 F.3d 1323 (2nd Cir. 2000). There is no suggestion here that State defendants UConn, UCHC or Drs. Deckers, Berlin and Wikel expressly consented to being sued in federal court. Nor is this a case where the State has affirmatively invoked this Court's jurisdiction. Therefore, this Court is without jurisdiction to entertain this Count against UConn, UCHC, and Drs. Deckers, Berlin and Wikel in their official capacities.

**2.     Plaintiff Has Failed To State A Claim For Relief**

Defendant Berlin was not involved in the press conference and press releases referred to in ¶409-413. Moreover, defendant Berlin had no knowledge of the specific data ownership

---

[13] It should be noted that plaintiff has not asserted any claims for trademark infringement. The false advertising or unfair competition prong of the Lanham Act is separate and distinct from the trademark infringement prong. See e.g., Stanfield v. Osborne Industries, 52 F.3d 867, 873 (10th Cir.), cert. denied, 116 S. Ct. 314 (1995).

31

issues as related to the Department of Defense proposal or techniques referred to in ¶414-422.
(SF 100). (Berlin Aff. ¶32). Therefore, there is no cause of action against defendant Berlin.

As to defendant Deckers, likewise he had no knowledge that the material referenced in
the DOD proposal was conjointly owned or developed in collaboration with plaintiff. (SF 100).
Therefore, there is no cause of action against Dr. Deckers.

Information relative to the data ownership issue was not obtained until January 13, 2003
when an internal UCHC investigative committee, acting pursuant to a complaint filed by
plaintiff, determined that data in question in the grant application, in particular the data related to
the Dermacentor cDNA library that was cited in the Preliminary Data Section of the application
was jointly owned by plaintiff and defendant Wikel and were included in the application without
plaintiff's express permission. (SF 90-95). On February 10, 2003, defendant Deckers wrote to
the DOD informing them of this fact. (SF 95). Therefore, the actions attributed to defendant
Deckers do not form the basis of a cause of action as said defendant was without knowledge as to
the ownership of the data so as to violate the Lanham Act.

As to defendant Wikel, the facts show that the DOD Proposed studies did not contain
anything done in collaboration with plaintiff. (SF 45-80). The only material that was jointly
derived was used solely in the preliminary data section to demonstrate that Dr. Wikel was
familiar with the use of ESTs. (SF 93, 96). As to the articles mentioned in ¶412 and 413, they
mentioned the DOD award but was more generally directed toward the line of investigation that
Dr. Wikel had pursued throughout his career, developing immunological strategies for
controlling blood feeding anthropod vectors of disease. Dr. Wikel did not craft these articles.
(SF 85-88). Moreover, plaintiff's claims that Dr. Wikel has excluded him from the research are

32

unfounded, unsupported, and speculative. (SF 56, 60, 67, 70, 96, 107-112, 114-116). Thus,

there is no claim against Dr. Wikel.

"[A] party seeking relief under Section 43 [11 U.S.C. 1125(a)(1)] generally must

demonstrate that they are in competition with the defendant. See Havana Club Holding v.

Galleon, 203 F.3d 116, 130 (2d Cir. 2000). Defendants Deckers, Wikel and Berlin are plaintiff's

supervisors and fellow UCHC employees. Per plaintiff, they are collaborators, not competitors.

Indeed, any grant issued by a funding agency is issued to the Health Center, not an individual

faculty member. Moreover, the "[Second Circuit] has limited standing to assert a section 43

claim to a purely commercial class of plaintiffs. PPX Enterprises, Inc v. Audiofidelity, Inc., 746

F.2d 120 (2d Cir. 1984); Sandoz Pharmaceuticals Corp. v. Richardson – Ficks, Inc., 902 F.2d

222 (3d Cir. 1990). Plaintiff cannot provide evidence to place himself in this commercial class.

> Thus, in construing the Lanham Act, we have been "careful to caution
> against misuse or over-extension" of trademark and related protections
> into areas traditionally occupied by patent or copyright. TrafFix, 532
> U.S., at 29, 149 L. Ed 2d 164, 121 S. Ct 1255. "The Lanham Act," we
> have said, "does not exist to reward manufacturers for their innovation
> in creating a particular device; that is the purpose of the patent law and
> its period [***20] of exclusivity." Id., at 34, 149 L. Ed. 2d 164, 121 S.
> Ct 1255. Federal trademark law "has no necessary relation to invention
> or discovery," Trade-Mark Cases, 100 U.S. 82, 94, 25 L. Ed. 550, 1879
> Dec. Comm'r Pat. 619 (1879).....

Dastar Corp. v. Twentieth Century Fox Film Corp., 123 S. Ct. 2041, 2048 (2003).

"[R]eading the phrase "origin of goods" in the Lanham Act in accordance with the Act's

common-law foundations (which were not designed to protect originality or creativity), and in

light of the copyright and patent laws (which were), we conclude that the phrase refers to the

producer of the tangible goods that are offered for sale, and not to the author of any idea,

33

concept, or communication embodied in those goods. Id. at 2049. The research data in question here are not "goods and services" under the Lanham Act.

Finally, plaintiff is required to show "actual monetary loss." Johnson & Johnson v. Carter-Wallace, Inc., 631 4.2d 186, 189 (2d Cir. 1980). This standard requires "more than a mere subjective belief of injury." Id. Where such injury is remote, plaintiff will be found to lack standing to bring a section 43 claim. See PDK Labs, Inc. v. Friedlander, 103 F.3d 1105, 1112 (2d Cir. 1997) ("[patentee's] hopes of eventually obtaining FDA approval and selling a retail weight loss product are too remote at this stage to challenge [plaintiff's] advertising."). Plaintiff has "no enforceable right to receive grants or awards...Such funding is discretionary with the funding agency." Abbs, et al v. Sullivan et al, 756 F. Supp. 1172, 1182 (W.D. Wis. 1990). It is the institution, not the individual researcher, which is the grantee of the award. When the DOD was informed of the UCHC internal investigative finding relative to the preliminary data ownership issue, it did not remove the grant from UCHC, nor did it remove Dr. Wikel from the grant as principal investigator, nor did it place plaintiff on the grant. Instead, the DOD thanked defendants for sharing that information. (SF 95, 98-99). Plaintiff was never a Principal Investigator on this grant and cannot show he lost this or any other grant as a result of defendants' alleged actions nor has his participation in the research world been impacted negatively.[14]  (SF 107-112, 114-116, 176-181).

As to his request for injunctive relief, Dr. Deckers has already made clear that plaintiff's intellectual property may only be used with plaintiff's permission. (SF 94). Plaintiff's request is

---

[14]  Moreover, the essence of unfair competition is the likelihood of confusion. Bi-Rite Enterprises, Inc. v. Button Master, 555 F. Supp. 1188 (S.D.N.Y.1988). Here, no such confusion can be claimed to exist where the DOD has been informed of the circumstances of which plaintiff complains.

34

moot at this point. By seeking a mandatory injunction, plaintiff, in essence, is seeking to have

his name placed on the DOD grant. The DOD already has chosen not to do so. (SF 98-99).

As to his request for damages, plaintiff has sought damages against defendants in their

official, not individual capacities. Such damage claims are barred by Eleventh Amendment and

sovereign immunity. Fetterman v. University of Connecticut, 192 Conn. 539, 550 (1984).

### E.    FIFTH CAUSE OF ACTION – CUTSA, CONN. GEN STAT. §35-50 ET SEQ.[15]

#### 1.    Eleventh Amendment Immunity

Plaintiff's claim for money damages pursuant to the Connecticut Uniform Trade Secrets

Act (CUTSA) is barred by the Eleventh Amendment which precludes federal courts from

entertaining suits brought for money damages by private citizens against unconsenting states or

state agencies. DeLoreto v. Ment, 944 F. Supp. 1023, 1030 (D. Conn. 1996). A state may

consent to being sued in its own courts, while still retaining Eleventh Amendment immunity

from suit in federal court. See, e.g., Florida Dept. of Public Health and Rehabilitative Services v.

Florida Nursing Home Ass'n., 101 S. Ct. 1032, 1034 (1981). In Atascadero State Hospital v.

Scanlon, 105 S. Ct. 3142, 3145 (1985), the Court found that California had not waived its

Eleventh Amendment immunity to federal suit, notwithstanding Article III, Section 5 of the

California State Constitution which provided: "Suits may be brought against the State in such

manners and in such courts as shall be directed by law." The Atascadero Court noted the

---

[15]  There is no right to a jury trial on this Count. See Pepe & Hazard v. Jones, 2002 Conn. Super. LEXIS 3355 (2002) (citing Associated Investment Company Limited Partnership v. Willard Associates IV, 230 Conn. 148, 645 A.2d 505 (1994)). Moreover, there is no right to a jury trial against the state under CUTSA. See Skinner v. Angliker, 211 Conn. 370, 377, 559 A.2d 701 (1989); Canning v. Lensink, 221 Conn. 346, 354, 603 A.2d 1155 (1992).

"absence of an unequivocal waiver <u>specifically applicable to federal court jurisdiction</u>." <u>Id</u>. at 3147 (emphasis added).

Conn. Gen. Stat. § 35-50 <u>et seq</u>. does not satisfy the <u>Atascadero</u> test because it does not specify in clear and "unequivocal" terms Connecticut's intention to subject itself and its state officials to suit in federal court.[16] It simply provides in Section 35-52(a) that "[a]ctual or threatened misappropriation may be enjoined upon application to any court of competent jurisdiction." "[A] State will be deemed to have waived its immunity only where stated by the most express language or by such overwhelming implication... as [will] leave no room for any other construction." <u>Atascadero</u>, 105 S. Ct. at 3146. Without the required express language or overwhelming implication, the state defendants are immune from suit.

## 2.    Plaintiff Has Failed To State A Claim For Relief

To be entitled to recovery for violation of CUTSA, plaintiff must prove that the information he claims is protected (1) is of the type that can be considered a "trade secret" under Conn. Gen. Stat. §35-51(d); (2) derives independent economic value, either actual or potential, from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; (3) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy; and (4) was misappropriated by the defendant.

There is no trade secret where the information is generally known. <u>See</u> <u>e.g.</u> <u>Robert S. Weiss & Associates, Inc. v. Wiederlight</u>, 208 Conn. 525, 546 A.2d 216 (1988); <u>Town & Country House & Homes Service, Inc., v. Evans</u>, 150 Conn. 314, 318-19 (1963) ("a basic rule of the law

---

[16] Assuming that plaintiff claims the court has pendent jurisdiction over the Fifth, Sixth, and Seventh Cause of Action, see Section I, <u>infra</u>.

36

of trade secrets [is] that '(m)atters of public knowledge or of general knowledge in an industry cannot be appropriated by one as his secret....'" For the present case, plaintiff alleges that he was instrumental in forming the collaboration with Dr. Cappello. Even if that were true, the collaboration between Dr. Wikel and Dr. Cappello and others involved the use of assays that are published in the scientific literature and therefore in the public domain. (SF 51, 53, 64-68). Further, the techniques described in the DOD proposal are different from those due in collaboration with plaintiff. (SF 51-78). The finding of the UCHC internal investigative committees bear out that jointly owned data was used only in the preliminary data section without the express permission of plaintiff, that the data was used for illustrative purposes and did not form a major component of the project, and that the DoD grant was utilizing and moving beyond the technology of the former Radolf collaboration. (SF 96). Therefore, plaintiff cannot prove the elements of the claim.

Plaintiff has proven no actual loss caused by any alleged misappropriation. "Actual loss in this context means the amount of money that the plaintiff lost from the defendant's, misappropriation, it is measured by how much better off the plaintiff would have been but for the defendant's misappropriation. Dinsmore & Associates, Ltd. V. D'Alessio, 2000 Conn. Super. LEXIS 114, 26 Conn. L. Rptr. 228 (2000) (Attached). Plaintiff has not proven that the use of the jointly owned preliminary data caused him any harm in the sense that, but for the defendant's use, plaintiff would have profited. Id. (SF 107-116, 176-181). Indeed, when the DOD was informed of the finding of the internal investigative committee, it did not place plaintiff on the grant. Nor did it remove Dr. Wikel from the grant, nor did it remove the funding from the Health Center. Rather, the DOD thanked the defendant for his forthrightness. (SF 98-99). For the same reasons, plaintiff cannot show unjust enrichment which requires (1) that the defendant was

37

benefited, (2) that the defendant unjustly did not pay the plaintiff for the benefits, and (3) that the

failure of payment was to the plaintiff's detriment….."

Zanoni v. Hudon, 48 Conn. App. 32, 39, 708 A.2d 222, cert.denied, 244 Conn, 928, 711 A.2d

730 (1998). "To be actionable, the violation of [§35-53(a)] must be shown to have been the

proximate cause of the injury." Krupa v. Farmington River Power Co., 147 Conn. 153, 159, 157

A.2d 914 (1959), appeal dismissed and cert. denied, 364 U.S. (1960). "To constitute such causal

relation between the defendant's tort and plaintiff's damage as will suffer to maintain an action

of tort, the defendant's tort must have been a substantial factor in producing the damage

complained of." Mahoney v. Beatman, 110 Conn. 184, 195, 147 A. 762 (1929).

     In short, plaintiff would have to show that he should have and would have been awarded

the proposal instead. There is absolutely no way plaintiff can prove the DOD would have

awarded the grant to him. Indeed, plaintiff has "no enforceable right to receive grants or

awards…. Such funding is discretionary with the funding agency." Abbs, et al v. Sullivan, et al,

756 F. Supp. 1172, 1182 (W.D. Wis. 1990). Moreover, it is the institution, in this case, not the

individual researcher that is the grantee of the award. There is no evidence plaintiff would

personally benefit financially. Moreover, when informed of this issue, the DOD did not place

plaintiff's name on the grant as Principal Investigator. Further, the research that formed the basis

of the proposal was not plaintiff's research and thus he had no right to benefit from it. (SF 45-

    80, 96-99).

     As to injunctive relief, plaintiff cannot show irreparable harm. (SF 107-116, 176-181).

Moreover, the only data in question is the jointly owned preliminary data. Plaintiff cannot enjoin

Dr. Wikel's use of his own data and technology. At best, he can seek to enjoin the use of only

the specific jointly owned data without plaintiff's permission. Dr. Wikel has already been

instructed to do so by Dr. Deckers. (SF 94). Thus, plaintiff's request for a mandatory injunction

is moot. In essence, plaintiff seeks to have his name placed on the grant or alternatively to have

the DOD research halted, thus precluding Dr. Wikel (and thus UConn) from performing his own

research unrelated to that of plaintiff. There is no basis in fact or law for the granting of such

relief such as to interfere with DOD's decision to fund this grant as it sees fit.[17]

## F.    SIXTH CAUSE OF ACTION - PUBLIC POLICY OF THE UNITED STATES AND TORTIOUS INTERFERENCE

Plaintiff alleges that the defendants' investigation into the reporting effort of research

associates on grant proposals "violated the public policy[18] of the United States of America" (FSC

¶608) and tortiously interfered with plaintiff's employment relationship with defendant UCHC

(FSC ¶612, 613). Plaintiff's allegations sound in tort.[19]

### 1.    This Cause of Action Is Barred By Sovereign Immunity

The doctrine of sovereign immunity, which establishes that the state cannot be sued

without its consent, is well-recognized in Connecticut. Duguay v. Hopkins, 191 Conn. 222, 228

(1983); Cahill v. Board of Education, 187 Conn. 94, 101 (1982). This common-law principle

that a state cannot be sued without its consent is firmly rooted and Connecticut courts have

---

[17]  Additionally, plaintiff has not sought damages against the defendants in their individual capacities, but rather in their official capacities. (FSC ¶XIV.E). Such damages are barred by sovereign immunity. Conn. Gen. Stat. § 4-165; Sentner v. Board of Trustees, 184 Conn. 339, 439 A. 2d 1033 (1981); Fetterman v. University of Connecticut, 192 Conn. 539, 550 (1984); Ex Parte Young, 209 U.S. 123, 159 (1909). See Section A.3, supra.

[18]  Plaintiff has not alleged a basis for finding that defendants' conduct violated a recognized public policy. The absence of such an allegation is particularly significant because UConn imposes an affirmative obligation on employees to report instances of misconduct or suspected misconduct and has a compliance policy to investigate such reports. (SF 117-119). Public policy strongly supports the Health Center's ability to deal with such matters as it deems reasonable and proper. Grigorenko v. Pauls, 297 F. Supp. 2d 446, 450 (D. Conn. 2003).

[19]  To the extent plaintiff raises a first amendment retaliation claim in ¶600 and 604, defendants address this in regard to the Eighth Cause of Action. See p. 49, infra.

refused to abrogate it by judicial action. In <u>Fidelity Bank Executor v. State of Connecticut</u>, 166

Conn. 251, 252-54 (1974), our Supreme Court stated:

> [A]s this court observed in <u>Murphy v. Ives</u>, 151
> Conn. 259, 262-263, 196 A.2d 596: [T]he state's
> sovereign right not to be sued without its consent is
> "not to be diminished by statute, unless a clear
> intention to that effect on the part of the legislature
> is disclosed, by the use of express terms or by force
> of necessary implication." <u>State v. Kilburn</u>, ...(81
> Conn. 9, 11, 69 A. 1028)."

Only the General Assembly can waive the State's immunity from suit, and there is no

general statute in this case authorizing the filing of the present action. Further, this action does

not fall within any of the Court-created exceptions to the sovereign immunity doctrine

summarized in <u>Duguay</u>. 191 Conn. at 227 n.4. The doctrine of sovereign immunity implicates

subject matter jurisdiction and is, therefore, a basis for granting a motion to dismiss. <u>Antinerella</u>

<u>v. Rioux</u>, 229 Conn. 479, 489 (1994). Where, as here, no substantial claim is made that the

defendant is acting pursuant to an unconstitutional enactment or in excess of statutory authority,

the purpose of the sovereign immunity doctrine requires dismissal of the claim for want of

jurisdiction. <u>Id.</u> at 488.

The Connecticut Constitution, Article eleven, sec. 4, provides that "[c]laims against the

state shall be resolved in such a manner as may be provided by law." Pursuant to that

constitutional authorization, the legislature has provided a procedure for bringing claims against

the state. Conn. Gen. Stat. §§ 4-141 through 4-165b. Conn. Gen. Stat. § 4-147 states in pertinent

part: "[a]ny person wishing to present a claim against the state shall file with the clerk of the

office of the claims commissioner a notice of claim...." It is undisputed that plaintiff failed to

properly present a claim in accordance with section 4-147.

40

> This legislation expressly bars suits upon claims
> cognizable by the claims commissioner except as he may
> authorize, an indication of the legislative determination
> to preserve sovereign immunity as a defense to monetary
> claims against the state not sanctioned by the
> commissioner or other statutory provision.  General
> Statutes 4-148(b), 4-160.

* * *

> Since we are not aware of any legal barrier to the
> presentation of the plaintiff's claim to the
> commissioner or to his favorable action upon it we
> cannot assume that recourse to that procedure
> would necessarily have been futile or inadequate."
> *Sullivan v. State, supra, 559. The failure of the
> plaintiffs to pursue this administrative remedy
> precludes an adjudication of the constitutional
> claim they have raised.* Id.  No determination of
> whether a constitutional necessity exists that would
> supersede the state's sovereign immunity can be
> made when the alternative procedure available
> through the claims commissioner, which might have
> provided the relief sought, has been ignored.  Id.;
> see *Holt-Lock, Inc. v. Zoning & Planning
> Commission,* 161 Conn. 182, 186, 286 A.2d 299
> (1971).  We conclude that the trial court should
> have dismissed the plaintiffs' claim for attorneys
> fees.

Doe v. Heintz, 204 Conn. 17, 35-36 (1987) (emphasis added) (footnotes omitted).

The claims for damages brought against UConn and certain officials at the university are, in effect, actions against the state as a sovereign and are, therefore, barred by the doctrine of sovereign immunity.  See Sentner v. Board of Trustees, 184 Conn. 339, 439 A.2d 1033 (1981). Consequently, such claims are subject to dismissal pursuant to § 143 of the Practice Book." Fetterman v. University of Connecticut, 192 Conn. 539, 550 (1984).  The defendant, State of Connecticut Health Center, a/k/a The University of Connecticut Health Center, is an arm of the University of Connecticut and is an agency of the state.  Therefore this state law claim is in

41

effect an action against the state as a sovereign. <u>Ex Parte Young</u>, 209 U.S. 123, 159 (1909).

Moreover, plaintiff is not entitled to injunctive relief. A Federal Court's grant of injunctive relief

against a state official may not be based on violations of state law. <u>Pennhurst</u>, 465 U.S. at 106;

<u>Dube</u>, 900 F.2d at 595.

### 2.    <u>Plaintiff Has Failed To State A Claim For Relief</u>

The Connecticut Supreme Court has recognized a cause of action for tortious interference

with contract right or business actions. <u>See</u> <u>Blake v. Levy</u>, 191 Conn. 257, 260, 464 A.2d 52

(1983). The elements of the claim are: "(1) a business relationship between the plaintiff and

another party; (2) the defendant's intentional interference with the business relationship while

knowing of the relationship; and (3) as a result of the interference, the plaintiff suffers actual

loss." <u>Hi-Ho Tower, Inc. v. Com-Tronics, Inc.</u>, 255 Conn. 20, 32-33 761 A.2d 1268, 1273

(2000). That loss must be proven to a "reasonable degree of certainty." <u>Id</u>. at 1275. Finally, the

"plaintiff in a tortious interference claim must demonstrate malice on the part of the defendant

not in the sense of ill will, but intentional interference without justification...In other words, the

[plaintiff] bears the burden of alleging and proving lack of justification on the part of the

[defendant]." <u>Daley v. Aetna Life & Casualty Co.</u>, 249 Conn. 766 805-06, 734 A.2d 112 (1999).

"[Not e]very act of interference is ...... tortious." <u>Blake</u>, 191 Conn. at 261, 464 A.2d 52. "[N]ot

every act that disturbs a contract or business expectancy is actionable...." <u>Daley</u>, 249 Conn. at

805-06; <u>Golembeski v. Metichewan Grange No. 190</u>, 20 Conn. App. 699, 704-04, 569 A.2d

1157, <u>cert. denied</u>, 214 Conn. 809, 573 A.2d 320 (1990).

It is well settled, however, that this cause of action only lies where a third party adversely

affects the contractual relations of two other parties. <u>Wellington Sys. v. Redding Group</u>, 49

42

Conn. App. 152, 168, 714 A.2d 21 (1998), cert. denied, 247 Conn. 905, 720 A.2d 516 (1998).

"'Where the alleged tortfeasor is an agent of one of the contracting parties, and thus indirectly a party of the contract, there can be no liability for such interference.' Taylor v. Maxim Medical, Inc., No. 3:99CV338(AHN), 2000 WL 630918, *3 (1) Conn. March 23, 2000)." Kelly v. City of Meriden, 120 F. Supp. 2d 191, 199 (D. Conn. 2000).

> Hence, an agent acting on behalf of the principal can only be liable if the plaintiff alleges and proves that the agent used his power improperly for his own benefit and that the benefit to the principal played no role in his actions. [Malik v. Carrier Corp., 202 F. 3d 97, 109 (2nd Cir. 2000)]. In other words, the plaintiff must allege and produce evidence that the agent used his power for personal gain. Bowman v. Grolsche Bierbrouwerij B.V., 474 F. Supp. 725, 733 (D. Conn 1979).

Id. See also Murray v. Bridgeport Hospital, 40 Conn. Supp. 56, 60-61 (1984) ("An actor acting legitimately within the scope of his authority cannot be held liable for interfering with or inducing his principal to break a contract between his principal and a third party, because to hold him liable would be, in effect, to hold the corporation liable in tort for breaching its own contract.") (citing Bowman v. Grolsche Bierbrouweij, B.V., 474 F. Supp. 725, 733 (D. Conn. 1979)).

Applying these principles here, defendants[20] are entitled to summary judgment as a matter of law because plaintiff has failed to allege that defendants acted for their own benefit or out of personal motive. (SF 106-112). Moreover, there has been no allegation or showing of a contractual or business relationship with a third party. Croslan v. Housing Authority for City of New Britain, 974 F. Supp. 161 (D. Conn. 1997). UCHC is an arm of and a constituent unit of the

---

[20]  It should be noted that plaintiff's prayer for relief is addressed solely to defendants Deckers and Berlin.

43

University of Connecticut. (SF 9-10). Defendants Deckers, Berlin and Wikel are all agents of

UCHC and hence UConn as well. (SF 1, 6, 7). In point of fact, Drs. Deckers, Berlin and Wikel

are all supervisors of plaintiff. Thus, these defendants are not strangers to plaintiff's

employment relationships, particularly where plaintiff has failed to allege or prove that such

defendants were acting outside the scope of their employment. Hayes v. Yale-New Haven

Hospital, 48 Conn. Supp. 311, 340, 844 A.2d 258, aff'd, 82 Conn. App. 58, 842 A2d 616 (2004)

(citing Wellington Systems, Inc.v. Redding Group, Inc., 49 Conn. App. 152, 168, 714 A.2d 21,

cert. denied, 247 Conn. 905, 720 A.2d 516 (1998) (citing Boyce v. American Liberty Ins. Co.,

204 F. Supp. 317,

318 (D. Conn. 1962))).[21]

    Further, as the Court noted in its ruling on Motion For Preliminary Injunction in this case

filed December 29, 2003, at p. 22-23:

> "[T]he Court cannot find that plaintiff has proved an
> improper motive for the investigation on this record.
> Rather, the Court finds that these communications reflect
> that UCHC administration officials were concerned about
> UCHC's research compliance responsibilities and
> determined not to repeat past mistakes, referenced to as
> the "Katz/Besdine affair." [Def. Attach. 4 ("Based on our
> past experience, such incorrect reporting can be a very
> serious matter.")]. Indeed, plaintiff readily acknowledges
> that UCHC has an independent responsibility to report

---

[21] In Tavoloni v. Mount Sinai Medical Center, et al., 1999 U.S. App. Lexis 24378 (2nd Cir. 1999), the Second
Circuit rejected a claim of tortious interference with a prospective economic advantage brought by a researcher
alleging a breach of a third-party beneficiary contract between N.I.H. and Mount Sinai. The Court stated:

> The N.I.H. awards grants pursuant to statutory authority. The terms of its
> awards are not subject to negotiation between the parties and, on review,
> we will interpret an N.I.H. grant by examining the relevant statute and
> regulations and not the parties' understanding. Therefore, there is no
> underlying contract between N.I.H. and either Mt. Sinai or Tavoloni to
> sustain either of Tavoloni's first two state law claims.

So too, Dr. Radolf cannot claim interference with the DOD grant or some future grant not yet awarded as such
grants are not contracts.

44

> and investigate compliance issues. [Doc. #22 at 7-8].
> None of the defendants is involved in the compliance
> investigation.... While Dr. Radolf alleges that the
> complaint about his grant reporting was filed with a
> retaliatory motive, the university officials to
> who he has ascribed this motive are not involved in
> determining the merits of the complaint.[22]

Here, defendants possessed a legitimate reason for instituting the compliance

investigation. (SF 119-123, 126, 136-138). A UCHC compliance investigative committee found

no retaliatory motive on the part of defendants in instituting this investigation. (SF 143-144,

146).

Moreover, plaintiff can show no actual loss. Plaintiff alleges harm to his professional

reputation, stigma, and jeopardy to his ability to pursue and receive research grants. The Second

Circuit has ruled that an employment action that is alleged to be "degrading and humiliating....in

the eyes of [one's] peers, family, and community, thereby damaging [plaintiff's] reputation and

self-esteem, by causing his family to suffer undue hardship, and by preventing him from

adequately providing for his family" does not "constitute irreparable harm sufficient to justify

injunctive relief." Stewart v. U.S. Immigration and Naturalization Service, 762 F.2d 193 (2d Cir.

1985). See also Sampson v. Murray, 415 U.S. 61, 91-92, 94 S. Ct. 937 (1974). In his argument

before this Court on plaintiff's Motion for Preliminary Injunction, "plaintiff 's counsel conceded

that the pending investigation has had no deleterious effect on his job." Ruling on Motion for

Preliminary Injunction, Doc. #42 at p. 21. No irreparable harm was demonstrated. "Plaintiff has

admitted that he has not been deterred from reporting violations and that his employment duties

---

[22] As noted by this Court in its Order denying plaintiff's Motion for Preliminary Injunction, "Plaintiff is asking a federal court to intervene and stop a state agency from conducting an investigation it has every obligation to conduct. There is no question from the undisputed facts of this case that there is, at a minimum, a colorable basis for conducting such an investigation. This Court does not see how the public interest would be served by preventing that investigation from proceeding in its ordinary course. See Halikas v. University of Minnesota, 856 F. Supp. 1331, 1335-36 (D. Minn. 1994)."

45

or status have not been altered by the pendency of the investigation.  Indeed, plaintiff has failed

to proffer evidence of any negative career impact stemming from the pending investigation."

Plaintiff has incurred no loss of salary or other compensation.  Id. at p. 22.

      Plaintiff alleges defendant's actions have jeopardized his ability to receive research

grants and pursue future scientific endeavors.  Plaintiff cannot prove he lost grants or otherwise

suffered.  (SF 107-108, 114-116, 173-181).  Indeed, he admits he has only applied for one small

grant because there is no need to apply for others.  (SF 177).  "[I]t is essential to a cause of action

for unlawful interference with business that it appear that, except for the tortious interference of

the defendant, there was a reasonable probability that the plaintiff would have entered into a

contract or made a profit."  Goldman v. Feinberg, 130 Conn. 671, 675 (1944).  Here, any grant

issued by a funding agency is issued to the Health Center, not an individual faculty member.

Plaintiff cannot even proffer specific evidence of any expectancies or commitments from a

funding agency to himself.  Indeed, when the DOD was informed of the data ownership issue

relative to the preliminary data, it did not seek to insert plaintiff into the grant.  Nor did it

withdraw the grant from the Health Center.  There is no evidence to support the claim that there

was a reasonable probability that plaintiff would have made a profit absent defendant's alleged

interference.  Nor has he shown the investigation has impacted his ability to receive other grants

and his concerns are based on pure speculation.  (SF 173-177).

> "As to future federal funding, plaintiff Abbs has
> no enforceable right to receive grants or awards,
> whatever his status as a researcher.  Such funding
> is always discretionary with the funding
> agency….
>
> Plaintiffs have proposed no facts from which I
> could find that Abbs is at risk for having any

46

> funds previously committed to him for any
> purpose or incurring any injury as a result of such
> a loss or that he has a contractual or otherwise
> enforceable claim to future funding. Without
> such a showing I cannot find that he has anything
> but a unilateral expectation of continued federal
> funding for research, which, as Roth makes clear,
> does not give rise to a constitutionally protected
> property interest.

Abbs, 756 F. Supp. at, 1183.[23]  Finally, Dr. Radolf himself has nationally publicized the

investigation in a widely distributed journal.  (SF 175).

        In addition, plaintiff's request for injunctive relief enjoining defendants Deckers

and Berlin and their agents from proceeding with the time and effort investigation which is

the subject of the Sixth Count is now moot.  That investigation has been completed and has

found the progress reports were not fraudulent.  (SF 145).   As to damages, said damages

are claimed against defendant Deckers and Berlin in their official, not individual capacities

and therefore barred by sovereign immunity.  See p. 39 ‑42, supra.

## G.    SEVENTH CAUSE OF ACTION - TORTIOUS INTERFERENCE WITH PROFESSIONAL OPPORTUNITIES

        Plaintiff alleges that defendant Wikel "intended to interfere with plaintiff's employment

relationship with the defendant, UCHC, as well as with the aforesaid vested proprietary interest."

(FSC ¶688).  Losses claimed are that plaintiff has been excluded from a field of scientific

research, harm to his professional standing, and having to defend himself against allegations

related to time and effort reporting.  The evidence proves otherwise.  (SF 107-108, 112-116, 176-

181).

---

[23]  As to noncompeting grants, the Court stated: "it cannot be said that even noncompeting continuation grants are legally enforceable by the grantee."  Id. at 1184.

47

First, this action is barred by sovereign immunity. See Section F.1, supra. Second, as previously discussed, Dr. Wikel's research is wholly different from that with which he had previously collaborated with plaintiff so there was no interference with a vested proprietary interest. (See p. 32, supra). (SF 45-80, 96). Third, Dr. Wikel, is an agent of the defendants and therefore, there can be no liability for such alleged interference. See p. 33, supra. Fourth, as the Court noted "there is, at minimum, a colorable basis for conducting such an investigation." See fn22, supra. Indeed, Northwestern University agreed to pay the United States $5.5 million to resolve allegations the school submitted false claims to the government for payment of medical research grants. See United States ex rel. Schwiderski v. Northwestern University, N.D. Ill., settlement 2/6/03 (attached). The government alleged that Northwestern's application for grants to the National Institutes of Health and other federal agencies overstated the time its researchers were able to devote to the work, misleading the government into paying more money than the university was lawfully entitled to receive. Further, the government alleged the university knowingly failed to comply with federal government requirements that a specified percentage of the researcher's effort be devoted to a grant.

This is exactly the situation alleged by Dr. Wikel which was the subject of the UCHC internal investigations. This was a legitimate concern brought forward in compliance with UCHC policy. (SF 117-138). Noncompetitive renewals and progress reports concerning federal grants are the responsibility of the Principal Investigator on the grant, in this case, plaintiff. The allegation leading to the investigation was that a noncompetitive renewal filed by plaintiff with the NIH showed that Bourrell was working at a certain percentage level on the grant which did not match up to Bourrell's actual time and effort. Defendant Wikel brought forth a legitimate concern regarding time and effort reporting. (SF 146). Granting plaintiff's request for relief

48

would only send a message to whistleblowers and employees who report concerns that retribution is the reward for compliance with UCHC policy.

Finally, plaintiff's claims as to motive are without factual support and purely speculative. (SF 149, 152-154). (See Wikel Aff. ¶65-76). Additionally, any damages are claimed as to defendant Wikel in his official rather than individual capacity and are barred by the doctrine of sovereign immunity. Ex Parte Young, 209 U.S. 123, 159 (1909).

## H.   EIGHTH CAUSE OF ACTION - FIRST AMENDMENT RIGHT OF FREEDOM OF SPEECH

Plaintiff alleges that "in voicing his opposition to the defendants' wrongful use of federal grant funds, the plaintiff was exercising his right to freedom of speech pursuant to the First Amendment to the United States Constitution" and that as a result, defendants subjected him "to false charges of wrongful conduct resulting in an investigation of his behavior by the defendant, University of Connecticut Health Center." (FSC¶ 788, 789).

To make out a First Amendment claim for a governmental employer's retaliation against an employee for exercising his right of free speech, a plaintiff must establish that "(1) his speech was constitutionally protected, (2) he suffered an adverse employment decision, and (3) a causal connection exists between his speech and the adverse employment decision against him." Morris v. Lindau, 196 F.3d 102, 110 (2d. Cir. 1999) (citing Mount Health City Sch. Dist. Bd. Of Educ. V. Doyle, 429, U.S. 274, 283-87 (1977)).  The state also has an interest as an employer in regulating speech by employees so as to promote the efficiency of public services performed by its employees. Connick v. Myers, 461 U.S. 138, 140 (1983).  To assess the extent to which a state may regulate the speech of its employees, courts must balance "the interests of the

49

[employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." Pickering v. Board of Educ., 391 U.S. 563, 568 (1968).

In Connick, 461 U.S. at 146, the Supreme Court established that speech that addresses a matter of public concern involves statements that can "be fairly considered as relating to any matter of political, social, or other concern to the community . . . ." That determination is made by evaluating "the content, form, and context of a given statement, as revealed by the whole record." Id. at 147-48.

Pursuant to the Connick analysis, "[s]ome courts have adopted a content-based analysis, focusing exclusively on which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government," McKinley v. City of Eloy, 705 F.2d 1110, 1113-14 (9th Cir. 1983), in effect providing per se protection to public-employee speech on certain topics of inherent public interest, such as official malfeasance or abuse of office. See Koch v. City of Hutchinson, 847 F. 2d 1436, 1446 n.17 (10th Cir.) (en banc), cert. denied, 488 U.S. 909 (1988).

Other courts have adopted an analysis which turns either entirely or in part on the employee's subjective intent, i.e., on whether the employee's speech was calculated to disclose misconduct or to inspire pubic debate on same issue of significant public interest. Conway v. Smith, 853 F.2d 789, 796 (10th Cir. 1988). See also Callaway v. Hafeman, 832 F.2d 414, 417 (7th Cir. 1987) (while the content of [the plaintiff's] communications touched upon an issue of public concern generally . . . such speech stands unprotected from employer scrutiny when uttered in the pursuit of purely private interests); Terrell v. University of Texas System Police, 792 F.2d 1360,

50

1362 (5th Cir. 1986), <u>cert. denied</u>, 479 U.S. 1064 (1987) (the mere fact that the topic of the employee's speech was one in which the public might or would have had a great interest is of little moment); <u>Linhart v. Glatfelter</u>, 771 F.2d 1004, 1010 (7th Cir. 1985) (<u>Connick</u> requires us to look at the point of the speech in question: was it the employee's point to bring wrong doing to light? Or to raise other issues of public concern, because they are of public concern? Or was the point to further some purely private interest?)."

The Second Circuit adheres to the latter view and examines the employee's motive, regardless of whether the subject matter of a particular statement is of inherent interest to society at large, "to determine whether the speech was calculated to redress personal grievances or whether it had a broader public purpose." <u>Lewis v. Cowen</u>, 165 F.3d 154, 163-64 (2d Cir. 1999); <u>see also Harman v. New York</u>, 140 F.3d 111, 119 (2d Cir. 1998) (examining whether speaker was motivated by "a desire to continue contributing to the public debate" when criticizing practices and policies of social services agency); <u>Blum v. Schlegel</u>, 18 F.3d 1005, 1012 (2d Cir. 1994) ("the fact that an employee's speech [critical of national drug policy] touches on matters of public concern will not render that speech protected where the employee's motive for the speech is private and personal"); <u>Ezekwo</u>, 940 F.2d at 781 (examining whether speaker was "on a mission to protect the public" despite inherent public interest in criticisms aimed at quality of physician training program). <u>See also Giacolone v. Abrams</u>, 850 F.2d 79, 87 (2d Cir. 1988) (holding that plaintiff's disagreement with supervisors about proper interpretation of certain provisions of federal tax law and about proper steps to be taken administratively entitled to little weight under <u>Pickering</u>).

51

1.    **Plaintiff's Speech Was Not Constitutionally Protected**

In the present case, there is nothing to demonstrate that plaintiff was attempting to

expose fraud and corruption, or even relatively innocuous wrongdoing on the part of defendants.

The matter was an internal dispute over interpretation over time and effort reporting

requirements rather than a plea of a concerned citizen to his government to follow proper

procedures. The facts clearly indicate that the issue of accurate reporting of Ken Bourell's time

and effort was brought to the attention of the Health Center by someone other than Dr. Radolf.

(SF 123, 136). In the middle of this, state payroll reports needed to be filed. (SF 124-130). The

Health Center relied on information previously submitted by plaintiff to the federal government

in multiple documents. (SF 120-127). As Principal Investigator, plaintiff is responsible for

maintaining an appropriate accounting of federal budgets on his grants. In attempting to get to

the truth of the matter, plaintiff was asked to provide accurate information. (SF 132-134). An

internal dispute arose as to how the information should be reported. This was resolved on the

state level. (However, the issue of plaintiff's apparent fraudulent reporting on federal

documents remained outstanding). (SF 136). Clearly, plaintiff's "reporting" of information to

Health Center officials was performed in the normal course of his duties as employee and

Principal Investigator and not as a private citizen. (SF 150). See Morris v. Crow, 142 F.3d

1379, 1382 (11th Cir. 1998) (Court "distinguished situations where and [sic] employee voluntary

reports matters for which he has no responsibility and those reported as part of his job

requirements."); Nero v. Hosp. Auth., 86 F. Supp. 2d 1214, 1225, (S.D. Ga. 1998), aff'd, 202 F.

3d 288 (11th Cir. 1999) ("Thus, even if the Plaintiffs in this case were doing a great job and were

fired or pressured to resign, it is irrelevant to the First Amendment question if they were acting

in their professional roles."). At no time did plaintiff bring his complaints regarding the

52

encumbering of funds to Dr. Deckers, administrative officials, or individuals outside the Health Center. (SF 135, 148).

Here, plaintiff's comments were "personal in nature and generally related to [his] own situation." Ezewko, 940 F.2d at 781. There was no attempt on plaintiff's part to point out systemic instances of inappropriate accounting. This was an internal dispute over the two particular grants in question which were the responsibility of plaintiff to account for. See Saulpaugh v. Monroe Community Hospital, 4 F.3d 134, 143 (2nd Cir. 1993) (plaintiff's complaint of sexual harassment rather than system-wide discrimination, not a matter of public concern and not protected under the First Amendment). See also Ferrara v. Mills, 781 F.2d 1508 (11th Cir. 1986) (public employee could not transform personal grievance into matter of public concern solely by involving a supposed popular interest in manner in which public institutions are run). Any information plaintiff reported was in his role as an employee after the reporting situation was brought to his attention. Any information reported was at the request of the Health Center to provide an accurate accounting.

"There is no indication the plaintiff spoke in, or even sought, a public forum." Ward v. Windsor Locks Board of Education, No. 3:98CV1384 (D. Conn. 1/31/00), 6 Conn. Ops 220 (February 28, 2000). "There is no evidence whatsoever that the plaintiff was on a mission to protect the public welfare as a private citizen. It is apparent that the plaintiff neither took any steps to alert the public to the ramifications of implementing the new policy nor sought to air [his] views in a public forum." Id. He did not try to expose wrongdoing or inform the public of problems within the Health Center; he simply disagreed with certain internal decisions of his

53

superiors in the course of those individuals attempting to discover the accurate facts as to Ken

Bourell's work effort. (SF 135, 148).

As the Court stated in its Ruling on Motion for Preliminary Injunction at pp. 26-27:

> It is undisputed that, as a result of meeting with Dave Gillon, Dr. Radolf documented the amount of time and effort Ken Bourell had actually spent on grant research. Plaintiff performed this task as a UCHC employee and Principal Investigator on the grants. Once the information was provided, UCHC corrected its report to the state regarding the payment of Bourell's salary, to reflect payment from the general fund and not as reported in the federal grants. Defendants argue, and the Court agrees, that "[a]ny speech was performed in the normal course of plaintiff's duties." Id. at 14. Indeed, e-mail communications of July 1, 2002, and August 2, 2002, between Dr. Radolf and David Gillon indicate that they were working together to account for Ken Bourell's time on grant activity. The record does not support plaintiff's view that he was speaking up to prevent "planned illegal activity" [Doc. #17 at 3]. These e-mails, internal UCHC communications, reflect an employee's efforts to clarify budgetary and accounting questions through internal channels in the course of his duties. Nothing in the e-mails between Gillon and Dr. Radolf raises any issue that can be "fairly considered as relating to any matter of political, social, or other concern to the community." Connick, 461 U.S. at 146. The e-mails are more akin to an internal dispute over allocation of grant funds than a plea of a concerned citizen to his government to follow proper procedures. Dr. Radolf never took his complaint to Deckers or Berlin, or other higher level administration officials, and he did not report the matter to the compliance committee or other federal agencies which investigate violations of federal regulations and NIH policy. [Doc. #17 at 8]....At oral argument, referring to Dr. Radolf's August 2 Memorandum of Understanding to Dave Gillon, plaintiff's counsel stated that plaintiff did not raise an issue in June, July or August because he thought the Bourrell matter was worked out, stating "there was no reason to believe it wasn't settled."
>
> Viewed objectively and as a whole, Dr. Radolf's speech did not address matters of public concern. His statements were employment-related in nature and addressed the proper documentation of time and effort of Ken Bourell so that grant funds could be properly allocated for payment of Bourell's salary. The record demonstrates that his primary aim was to protect his grant funds and to reverse the encumbrance of grant funds to pay Ken Bourell's salary. "[T]he fact that an issue involves public

54

money is alone not enough to convert expressive activity into commentary on a matter of public concern simply because, in other circumstances, its subject matter might be of public interest. The point of the protection afforded public employees is to allow public employees a voice on issues actually affecting and interesting the community at large." Gragg v. Kentucky Cabinet for Workforce Dev., 289 F.3d 958, 966 (6th Cir. 2002). Any information Dr. Radolf reported was in his role as an employee after the Bourell time and effort issue was brought to his attention. [Doc. #20 at 14-15]. In this Circuit, "when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." Connick, 461 U.S. at 147.

The Court concluded by stating: "The Court finds as a matter of law that plaintiff has failed to meet his burden of establishing that the speech at issue was protected." Id.[24]

## 2.    Plaintiff Did Not Suffer An Adverse Employment Action

Even if it is found that plaintiff engaged in constitutionally protected speech, defendants submit that plaintiff did not suffer an adverse employment action. See p. 23-24 supra. An investigation does not constitute an adverse employment action. Benningfield v. City of Houston, 157 F.3d 369, 376 (5th Cir. 1998); Pierce v. Texas Dept. of Criminal Justice, Inst. Dir., 37 F.3d 1146, 1150 (5th Cir. 1994); Palmer-Boahene v. Board of Trustees of City Colleges of Chicago, 307 F. Supp. 2d 997, 998 (N.D. Ill. 2004). In Boylan v. Arruda, 42 F. Supp 2d 352 (S.D.N.Y. 1999), plaintiff claimed he was the subject of an unwarranted investigation, referred to the Westchester District Attorney's office, into whether he had engaged in credit card fraud. The Court concluded that the investigation, even assuming it was both unfounded and retaliatory in

---

[24] Defendants submit that the Court's rulings on plaintiff's Motion for Preliminary Injunction bar further litigation of this Count under the "law of the case" doctrine. Liona Corp. v. PCH Assocs., 949 F.2d 585, 592 (2d Cir. 1991) ("when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case"); See also 1B James W. Moore, Jo D. Lucas & Thomas S. Currier, Moore's Federal Practice 0.404[ ], at 117 (1991) ("Under the doctrine of the law of the case, a decision on an issue of law made at one stage of a case becomes a binding precedent to be followed in successive states of the same litigation").

nature, did not give rise to a cause of action under 42 U.S.C. § 1983 for First Amendment

retaliation. The Court stated at 357-58:

> ...simply undergoing an investigation is not sufficient to
> constitute '"adverse employment action" even though the
> allegedly retaliatory investigation in this case was criminal
> rather than civil in nature and was conducted by an outside
> agency rather than internally.
>
> I view this result as a necessary corollary of the Supreme
> Court's holding in Paul v. Davis, 424 U.S. 693, 96 S. Ct. 1155,
> 47 L.Ed. 2d 405, rehg denied, 425 U.S. 985, 96 S. Ct. 2194, 98
> L.Ed. 2d 811 (1976). In that case, the Court announced that
> injury to one's reputation or "stigma" resulting from improper
> acts by state officials did not qualify as either a liberty or
> property interest for § 1983 purposes, Id., at 701-02, 96 S. Ct.
> 1155...
>
> ...the requirement, in this and every other Circuit, that a plaintiff in a First
> Amendment retaliation case establish that he suffered an "adverse employment
> action," see Blum v. Schegel, supra, 18 F.3d 1005, 1010 (2d Cir. 1994), would
> appear to serve the same purpose as does Paul's requirement that a liberty or
> property interest, not just the plaintiff's reputation, be at stake in a due process
> case. It takes the plaintiff's claim out of the realm of the merely defamatory and
> transforms it into a case of truly constitutional dimension.

Accord Breaux v. City of Garland, 205 F.3d 150 (5th Cir.), cert. denied, 531 U.S. 815 (2000)

(internal investigation, order to undergo psychological exam, placement on administrative leave

with pay, false accusations, rescinded reprimand, non-punitive transfer to another position not

less desirable is not an actual or constructive adverse employment action).

    In the instant case, plaintiff alleges only that he is stigmatized by being subjected to an

allegedly unwarranted internal UCHC investigation. "As the Fifth Circuit held in Benningfield,

a plaintiff cannot shoe-horn this particular act of retaliation into the 'adverse employment

action' box, because he suffered no employment consequences as a result-other than, perhaps,

injury to his reputation, which is simply not enough." Id. at 358. At oral argument on the

56

Motion for Preliminary Injunction, "plaintiff's counsel conceded that the pending investigation has had no deleterious effect on his job". Ruling at p. 21. Nor can plaintiff show other adverse impacts (SF 173-181), particularly when he himself has publicized it nationally. (SF 175).

### 3.    Plaintiff's Claims Are Barred By The Doctrine Of Qualified Immunity

First, it is not clearly established that plaintiff engaged in protected speech under the First Amendment. Further, it is not clearly established law that an investigation constitutes an adverse employment action.

Second, defendants actions were objectively reasonable under the circumstances presented. As the Court noted in its Ruling on Motion for Preliminary Injunction "there is, at a minimum, a colorable basis for conducting such an investigation." [Doc. #41]. As previously discussed, UCHC has a federally mandated compliance program which requires investigation of possible violations of federal and state laws. Time and effort reporting is a serious compliance issue among research institutions. As UCHC must ensure that it makes proper use of federal research funds, it had no choice but to investigate this matter. Therefore, defendants are entitled to the defense of qualified immunity.

### H.    THE STATE CLAIMS SHOULD BE DISMISSED UNDER THE DOCTRINE OF PENDENT JURISDICTION

Should this Court dismiss plaintiff's federal claims, then the remaining state claims set forth in the Fifth, Sixth, and Seventh Causes of Action should be dismissed under the doctrine of pendent jurisdiction, 28 U.S.C. § 1367 (c) (3); United Mine Workers v. Gibbs, 383 U.S. 715, 726-27 (1966). A review of the diverse claims set forth in plaintiff's eight causes of action show that the entire action before the court does not "comprise[ ] but one constitutional 'case.'" Id. at

57