Callaway v. Hafeman, 832 F.2d 414, 417 (7th Cir. 1987) (while the content of [the plaintiff's]

communications touched upon an issue of public concern generally . . . such speech stands

unprotected from employer scrutiny when uttered in the pursuit of purely private interests);

Terrell v. University of Texas System Police, 792 F.2d 1360, 1362 (5th Cir. 1986) cert. denied,

479 U.S. 1064 (1987) (the mere fact that the topic of the employee's speech was one in which the

public might or would have had a great interest is of little moment); Linhart v. Glatfelter, 771

F.2d 1004, 1010 (7th Cir. 1985) (Connick requires us to look at the point of the speech in

question: was it the employee's point to bring wrong doing to light?  Or to raise other issues of

public concern, because they are of public concern?  Or was the point to further some purely

private interest?)."  (Internal quotation marks omitted.)  O'Connor v. Steeves, 994 F.2d 905, 913

(1st Cir.), cert. denied sub nom.  Nahant v. O'Connor, 510 U.S. 1024 (1993).

        The Second Circuit adheres to the latter view and examines the employee's motive,

regardless of whether the subject matter of a particular statement is of inherent interest to society

at large, "to determine whether the speech was calculated to redress personal grievances or

whether it had a broader public purpose."  Lewis v. Cowen, 165 F.3d 154, 163-64 (2d Cir.

1999).  See also Harman v. New York, 140 F.3d 111, 119 (2d Cir. 1998) (examining whether

speaker was motivated by "a desire to continue contributing to the public debate" when

criticizing practices and policies of social services agency); Blum v. Schlegel, 18 F.3d 1005,

1012 (2d Cir. 1994) ("the fact that an employee's speech [critical of national drug policy]

touches on matters of public concern will not render that speech protected where the employee's

motive for the speech is private and personal"); Ezekwo, 940 F.2d at 781 (examining whether

speaker was "on a mission to protect the public" despite inherent public interest in criticisms

aimed at quality of physician training program).

If it is determined that an employee spoke "not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest," the statement is not protected, and courts generally will not second guess the propriety of a personnel decision made by an employer allegedly in reaction to the employee's behavior. Connick, 461 U.S. at 147. "The determinative question is whether [the speaker's interest in the matter of public concern] arises from the speaker's status as a public citizen or from the speaker's status as a public employee." Blum, 18 F.3d at 1013. See e.g., Giacolone, 850 F.2d at 87 (holding that plaintiff's disagreement with supervisors about proper interpretation of certain provisions of federal tax laws and about proper steps to be taken administratively entitled to little weight under Pickering).

In the prior action filed by plaintiff which plaintiff claims forms the basis for retaliation for exercising his First Amendment rights, plaintiff alleged that defendants (1) removed him as Director for the Center of Microbial Pathogeneses without due process of law; (2) excluded him from research in violation of his First Amendment right to academic freedom; (3) barred him from participating in his scientific endeavors in violation of his due process rights; (4) misappropriated his intellectual property in violation of the Lanham Act and the Connecticut Uniform Trade Secret Act; (5) tortiously interfered with his scientific endeavors and employment relationship by instituting an investigation against him; and (6) violated his First Amendment rights by initiating an investigation against him.[8]

It can scarcely be denied that the topics of plaintiff's "speech," i.e. personal complaints about defendants' treatment of plaintiff as an employee, "are quintessentially items of individual,

---

[8] In its Ruling on Motion for Preliminary Injunction, the Court found that plaintiff's First Amendment rights had not been violated. Doc. #42.

rather than public, concern." See Garvie v. Martin, 845 F.2d 647, 651 (11th Cir. 1988), in which the Court stated that "the record shows that Garvie's criticisms [of his superior's actions regarding allocation of department funds, review of faculty grievances, and departmental votes on faculty non-retention] more closely resembled an employee's complaints regarding his superior's actions and his own responsibilities as a Department Head than a citizen's speaking out on a matter of public decision-making.  We find, therefore, that competent university administrators could reasonably have concluded that termination of Garvie's Headship did not violate any of his first amendment rights, and we therefore find defendants entitled to qualified immunity on the first amendment claim." See also Wright v. Illinois Dept. of Children & Family Services, 40 F.3d 1492, 1505 (7th Cir. 1994) ("airing private gripes in the form of a [judicial] complaint or testimony cannot alter their status as private gripes").  "The Connick court made it plain that an individual cannot bootstrap his individual grievance into a matter of public concern either by bruting his complaint to the world or by invoking a supposed popular interest in all aspects of the way public institutions are run." Mahaffey, 562 F. Supp. at 890 (citing Connick, 103 S.Ct. at 1690).

Here, Plaintiff is attempting to constitutionalize what amounts to an employee grievance. Id.  Clearly, plaintiff's motive was to redress personal grievances rather than a broader public purpose of bringing to light government wrongdoing. Connick, 461 U.S. at 147; Finn v. New Mexico, 249 F.3d 1241, 1247 (10th Cir. 2001) (speech pertaining to internal personnel disputes and working conditions is not speech and matter of public concern); Wallscetti v. Fox, 258 F.3d 662, 667 (7th Cir. 2001) ("speech relating only to the effect an employer's action has on the speaker is not shielded by the First Amendment").  Therefore, plaintiff did not engage in constitutionally protected speech.

31

2.    **There Has Been No Adverse Employment Action
       Or Showing of Causation**

To make out a First Amendment claim for a governmental employer's retaliation against

an employee for exercising his right of free speech, plaintiff bears the burden of establishing that

he suffered an adverse employment action and that there was a causal connection between his

speech and the adverse employment action. See Blum, 18 F.3d at 1010; Morris, 196 F.3d at

110. Accord Gorman-Bakos, 252 F.3d at 553.

a.    **No Adverse Employment Action**

An adverse employment action is a materially adverse change in the terms and conditions

of employment. Galabya v. New York Board of Educ., 202 F.3d 636, 640 (2d Cir. 2000). "A

materially adverse change might be indicated by a termination of employment, a demotion

evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits,

significantly diminished material responsibilities, or other indices…unique to a particular

situation." Id. (quoting Crady v. Liberty Nat'l Bank & Trust Co., 993 F.2d 132, 136 (7th Cir.

1993)). Accord Richardson v. New York State Dep't of Correctional Serv., 180 F.3d 426, 446

(2d Cir. 1999); Patrolmen's Benevolent Association of the City of New York v. City of New

York, 310 F.3d 43, 51 (2d Cir. 2002). "[M]ere changes in working conditions that cause some

inconvenience do not constitute adverse employment actions as a matter of law." Montanile v.

Nat'l Broadcasting Co., 211 F. Supp. 481, 486 (S.D.N.Y. 2002). See also Dortz v. City of New

York, 904 F. Supp. 127, 156 (S.D.N.Y. 1995); Galabya, 202 F.3d at 640 (must be "more

disruptive than a mere inconvenience or an alteration of job responsibilities").

"To be an 'adverse employment action,' the step taken by the employer must affect the

plaintiff's employment in a way that is both detrimental and substantial. Mishk v. Destafano, 5

F. Supp. 2d 194, 202 (S.D.N.Y. 1998) (quoting Bernheim v. Litt, 79 F.3d 318, 327 (2d Cir. 1996) (Jacobs, J., concurring)).” Boykab v. Arruda, 42 F. Supp. 2d 352, 354-55 (S.D.N.Y. 1999). “In order to prove a claim of First Amendment retaliation in a situation other than the classic examples of discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand, plaintiff must show that (1) using an objective standard; (2) the total circumstances of [his] working environment changed to become unreasonably inferior and adverse when compared to a typical or normal, not ideal or model, workplace.” Phillips v. Bowen, 278 F.3d 103, 109 (2d Cir. 2002).

In the present case, plaintiff cannot demonstrate the letter of April 4, 2003 resulted in a materially adverse employment action that has appreciably impacted his employment. See p.5-12, 18-21, supra. A transfer or reassignment which involves only minor changes in working conditions and does not involve a reduction in pay or benefits does not constitute an adverse action. Ledergerber v. Stangler, 122 F.3d 1142, 1144-45 (8th Cir. 1997). See Bernheim, 79 F.3d at 326, in which the Court stated:

> Bernheim has not suffered dismissal, reduction in pay, or demotion in rank. Her assignment to a particular class, classroom or supply closet – even if she prefers another class, classroom or supply closet – does not appreciably impact on her employment as an elementary school teacher.

Courts “have neither the competency nor the resources to micromanage the administration of thousands of state educational institutions.” Dorsett, 940 F.2d at 124. Similarly, deciding whether a faculty member can be a graduate student mentor, or sit on a Steering Committee or serve in PHS-funded academic and/or administrative leadership positions would constitute needless micromanagement by the Court. “[N]ot everything that makes an

33

employee unhappy is an actionable adverse action." <u>Phillips v. Bowen</u>, 278 F.3d 103, 117 (2d

Cir. 2002); <u>Ribando v. United Airlines</u>, 200 F.3d 507, 511 (7th Cir. 1999) (quoting <u>Smart v. Ball</u>

<u>State Univ.</u>, 89 F.3d 437, 441 (7th Cir. 1996)). <u>See also Rabinovitz v. Pena</u>, 89 F.3d 482, 488-89

(7th Cir. 1996) (loss of bonus not adverse employment action when employee not automatically

entitled to bonus). Here, plaintiff was not <u>entitled</u> to any of these so-called "rights and

privileges."

### b.    No Causation

Finally, plaintiff's causation claim must fail. " Temporal proximity "will rarely be

sufficient in and of itself to create a triable issue." <u>Stone v. City of Indianapolis Public Utilities</u>,

281 F.3d 640, 644 (7th Cir. 2002); <u>Thomas v. Romeis</u>, 198 F.3d 1022, 1028 (7th Cir. 2000)

(closeness in time not suspicious when other evidence established legitimate reason for

termination). <u>Hollander v. American Cyanamid Co.</u>, 895 F.2d 80, 85-86 (2d Cir. 1990) (period

of three months between protected act and adverse employment action held insufficient temporal

proximity to establish retaliation claim under ADEA). The coincidence of timing or "[t]he mere

fact that one event followed another is not sufficient to make out a causal link." <u>Hoeppner v.</u>

<u>Crotched Mountain Rehabilitation Ctr., Inc.</u>, 31 F.3d I, 14-15 (1st Cir. 1994) (conclusory

allegation of retaliation unsupported by specific facts insufficient). Dr. Deckers has provided

ample evidence of his legitimate reasons for his action. (Deckers Aff. ¶25-33).

The causation requirement is rigorous…claimant must show that 'but for' the protected

expression the employee would not have taken the alleged retaliatory action…" <u>Huang</u>, 902 F.2d

at 1140-41. Defendant's actions came as a result of the ORI mandate voluntarily agreed to by

Dr. Radolf and not as a result of the filing of his first action. Plaintiff cannot show that the filing

employee unhappy is an actionable adverse action." <u>Phillips v. Bowen</u>, 278 F.3d 103, 117 (2d

Cir. 2002); <u>Ribando v. United Airlines</u>, 200 F.3d 507, 511 (7th Cir. 1999) (quoting <u>Smart v. Ball</u>

<u>State Univ.</u>, 89 F.3d 437, 441 (7th Cir. 1996)). <u>See also</u> <u>Rabinovitz v. Pena</u>, 89 F.3d 482, 488-89

(7th Cir. 1996) (loss of bonus not adverse employment action when employee not automatically

entitled to bonus). Here, plaintiff was not <u>entitled</u> to any of these so-called "rights and

privileges."


   **b.    <u>No Causation</u>**

   Finally, plaintiff's causation claim must fail. " Temporal proximity "will rarely be

sufficient in and of itself to create a triable issue." <u>Stone v. City of Indianapolis Public Utilities</u>,

281 F.3d 640, 644 (7th Cir. 2002); <u>Thomas v. Romeis</u>, 198 F.3d 1022, 1028 (7th Cir. 2000)

(closeness in time not suspicious when other evidence established legitimate reason for

termination). <u>Hollander v. American Cyanamid Co.</u>, 895 F.2d 80, 85-86 (2d Cir. 1990) (period

of three months between protected act and adverse employment action held insufficient temporal

proximity to establish retaliation claim under ADEA). The coincidence of timing or "[t]he mere

fact that one event followed another is not sufficient to make out a causal link." <u>Hoeppner v.</u>

<u>Crotched Mountain Rehabilitation Ctr., Inc.</u>, 31 F.3d I, 14-15 (1st Cir. 1994) (conclusory

allegation of retaliation unsupported by specific facts insufficient). Dr. Deckers has provided

ample evidence of his legitimate reasons for his action. (Deckers Aff. ¶25-33).


   The causation requirement is rigorous...claimant must show that 'but for' the protected

expression the employee would not have taken the alleged retaliatory action..." <u>Huang</u>, 902 F.2d

at 1140-41. Defendant's actions came as a result of the ORI mandate voluntarily agreed to by

Dr. Radolf and not as a result of the filing of his first action. Plaintiff cannot show that the filing

of the suit was a substantial or motivating factor in the alleged adverse employment action.
Moreover, the Court should afford defendant a degree of deference for its exercise of academic
judgment. See Univ. of Mich. v. Ewing, 474 U.S. 214, 255 (1985). "Plaintiffs may not rely on
conclusory assertions of retaliatory motive but must offer instead some tangible proof to
demonstrate that their version of what occurred was not imaginary." Morris, 196 F.3d at 111.

"If knowledge of a discrimination claim preceding an adverse action, itself, could support
an inference of causation, then all cases in which employers knew about the discrimination claim
would survive a directed verdict challenge based on causation. They do not. See, e.g., McMillan
v. Massachusetts Soc. For the Prevention of Cruelty to Animals, 140 F.3d 288, 309 (1st Cir.
1998), cert. denied, 525 U.S. 1104, 119 S.Ct. 870, 142 L.Ed. 2d 772 (1999)." Mole v. University
of Massachusetts, 793 N.E. 2d 1098, 1115 (Mass. App. Ct. 2003). "Were the rule otherwise,
then a disgruntled employee, no matter how poor his performance or how contemptuous his
attitude toward his supervisor, could effectively inhibit a well-deserved discharge by merely
filing, or threatening to file, a discrimination complaint." Mesnick v. General Elec. Co., 950
F.2d 816, 828 (1st Cir. 1991), cert. denied, 504 U.S. 985 (1992). See also Richmond v. ONEOK,
120 F.3d 205, 209 (10th Cir. 1997) (3-month period insufficient to establish causal connection);
Hughes v. Derwinski, 967 F.2d 1168, 1174-75 (7th Cir. 1992) (4-month period insufficient).

Moreover, as pointed out previously, plaintiff is complaining about defendants' actions
which took place in 2001-02, more than a year prior to the filing of plaintiff's first lawsuit in
February 2003 (Radolf Dep. p.241-246), making a claim of retaliation impossible.

Plaintiff has not presented sufficient evidence to create genuine issues of material fact as
to whether he engaged in protected speech, whether he suffered an adverse employment action,

35

and whether his alleged protected activity was a substantial or motivating factor in any alleged

adverse employment action. As a result, this claim must be dismissed.

3.    **Plaintiff's Claim For Money Damages Against Dr. Deckers In His Individual Capacity Is Barred By The Doctrine Of Qualified Immunity**

Defendant submits that he is entitled to qualified immunity relative to plaintiff's claims

for money damages. (See p.24-26, supra). The acts of supervising a faculty member of an

academic center are clearly discretionary. The law was not clearly established that plaintiff

engaged in constitutionally protected speech or that defendant's actions in accordance with the

Voluntary Exclusion Agreement constituted an adverse employment action violative of the law.

See Garvie, 845 F.2d at 650, in which plaintiff failed to show his removal as Department Head

was in retaliation for his protected speech.

The Court stated:

> In arguing against defendants' claim of qualified immunity, Garvie asserts
> that a reasonably competent public official would have known in 1986 that
> an alleged retaliatory termination of a department head based on the
> exercise of first amendment rights unlawful. We believe that under the
> reasoning of *Anderson*, however, Garvie's argument presents too general a
> question. Instead, we consider whether reasonably competent officials
> could have disagreed on whether and to what extent Garvie's speech was
> protected by the first amendment.

Moreover, Dr. Deckers clearly did not take these actions in retaliation.[9] Where there is a

"total absence of evidence of retaliation," there is no basis on which to conclude that the

---

[9] In Salim v. Proulx, 93 F.3d 86, 90 (2d Cir. 1996), the Second Circuit clarified that when a defendant claims he didn't commit the alleged unconstitutional act, the denial falls within the qualified immunity defense. The Court reasoned:

> Evidently, the Supreme Court regards a defendant's claim that "he didn't do it" as
> within the scope of the qualified immunity defense on the theory that a defendant
> who did not take the action alleged by the plaintiff did not violate any clearly
> established law prohibiting such action. In most cases where the defendant
> contends that he did not violate clearly established law, the disputed issue is
> whether the pertinent law was clearly established. But Johnson v. Jones, 115 S.
> Ct. 2151 (1995)] informed us that the issue may also be whether the defendant
> took the alleged action at all.

36

defendant seeking qualified immunity violated clearly established law. Gubitosi v. Kapica, 154

F.3d 30, 33 (2d Cir. 1998). Further, defendants' actions were objectively reasonable in light of

ORI's mandate to which plaintiff voluntarily agreed. Plaintiff's claim for money damages is

therefore barred.

## C.    DEMAND FOR INJUNCTIVE AND DECLARATORY RELIEF IS BARRED BY ELEVENTH AMENDMENT

Ex Parte Young, 209 U.S. 123, 155-56 (1908), held that the Eleventh Amendment does

not prevent federal courts from granting prospective relief to prevent a continuing violation of

federal law by a state official. See, e.g., Pennhurst State Sch. & Hosp. V. Halderman, 465 U.S.

89, 102-03 (1985). Likewise, a federal court is barred from granting declaratory relief that

relates only to the legality of a past action. Green v. Mansour, 474 U.S. 64, 73 (1985).

Plaintiff's voluntary removal from the Steering Committee, mentor list, or the

appointment of a co-major advisor do not constitute a continuing violation of federal law.

"These events are in the past and will not occur in the future." Price v. University of Alabama,

2003 WL 23521509 (N.D. Ala. 2003) (plaintiff's termination and the University Staff Mediation

Council's decision to deny his request for a hearing does not constitute a continuing violation of

federal law). "Completed Acts such as termination through discharge or resignation, or job

transfer, or discontinuance of a particular job assignment, are not acts of a continuing nature."

Malarkey v. Texaco, Inc., 559 F. Supp. 117, 121 (S.D. N.Y. 1982), aff'd, 704 F.2d 674 (2d Cir.

1983). (emphasis added). See also Lightfoot v. Union Carbide Corp., 110 F.3d 898, 907 (2d Cir.

1997) ("Lightfoot's attempt to characterize as a continuing violation Carbide's alleged failure to

compensate him adequately is therefore unavailing.") (citing Malarkey, 559 F. Supp. At 1121).

By requesting declaratory and injunctive relief, plaintiff seeks to have this Court circumvent the

37

By requesting declaratory and injunctive relief, plaintiff seeks to have this Court circumvent the Eleventh Amendment by holding defendants, in their official capacities, and thus the State of Connecticut, liable for acts that are not of a continuing nature. As such, his claims for declaratory and injunctive relief are barred by the Eleventh Amendment.

## CONCLUSION

"It is at least judicial folklore, now three quarters of a century old, that one cannot yell "fire" in a crowded theatre when there is no fire." Fong v. Purdue University, 692 F. Supp. 930, 957 (N.D. Ill. 1988). It is equally true that a professor cannot be found guilty of scientific misconduct both by the university at which he is employed and the federal government, voluntarily agree to certain conditions which impact his employer, and then complain when his employer acts in accordance with those conditions.

It is not for this Court to decide whether the officials at the University of Connecticut Health Center have acted in total wisdom in dealing with plaintiff and the problems relating to him. "Under Article III of the Constitution and the country's federalistic framework, the basic decisional process of a large state university must and should be vested in the authorities at that university under legislation created at the state level and certainly, in modern times supplemented by federal legislation. The basic decisional processes in that sense are administrative and legislative ones at state, federal and local levels. Unless the Constitution of the United States is clearly implicated, it is not for this court to interfere with those ongoing processes." Id. at 958.

38

The discretionary choices made by provosts, deans, and faculties in the contexts of hiring, tenure, curriculum selection, grants, salaries, and job assignments all potentially burden individual freedom to some extent, but courts have generally been unwilling to second-guess these necessarily sensitive and subjective academic judgments. See Ewing, 474 U.S. at 225 ("When judges are asked to review the substance of a genuinely academic decision, …they should show great respect for the faculty's professional judgment."); University of Pa. v. EEOC, 493 U.S. 182, 199 (1990) ("[C]ourts have stressed the importance of avoiding second-guessing of legitimate academic judgments."); Parate v. Isibor, 868 F.2d 821, 827 (6th Cir. 1989) ("[B]ecause the University must remain independent and autonomous to enjoy academic freedom, the federal courts are reluctant to interfere in the internal operations of the academy."); Feldman v. Ho, 171 F.3d 494, 495 (7th Cir. 1999) ("A university's academic independence is protected by the Constitution, just like a faculty member's own speech.").

In the present case, defendants made a legitimate academic judgment when faced with the ORI mandate. Plaintiff has failed to show a constitutional violation. Therefore, defendant respectfully submits that summary judgment against plaintiff is appropriate.

39

DEFENDANT

PETER J. DECKERS

RICHARD BLUMENTHAL
ATTORNEY GENERAL

_Jane D. Comerford_

JANE D. COMERFORD (Ct 06328)
ASSISTANT ATTORNEY GENERAL
UNIVERSITY OF CONNECTICUT
    HEALTH CENTER
263 Farmington Avenue
Farmington, CT 06030-3803
Tel. (860) 679-1114
Fax (860) 679-1997
E-Mail-Comerford@ADP.UCHC.EDU

## CERTIFICATION

This is to certify that on this 16th day of August, the foregoing was mailed to counsel of record as follows pursuant to FRCP 5(b):

Thomas W. Bucci, Esq.
Willinger, Willinger & Bucci, PC
855 Main Street
Bridgeport, CT 06604

_Jane D. Comerford_

Jane D. Comerford
Assistant Attorney General

40