# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| JUSTIN D. RADOLF,<br>    Plaintiff, | CIVIL NO. 3: 03CV242 (MRK)<br>LEAD/MASTER DOCKET NO. |
| V. | |
| PETER J. DECKERS, EXECUTIVE<br>VICE PRESIDENT FOR HEALTH<br>AFFAIRS AND DEAN OF THE SCHOOL<br>OF MEDICINE, INDIVIDUALLY AND<br>IN HIS OFFICIAL CAPACITY, | CASE NO. 3:03CV672(MRK)<br>MEMBER CASE |
| Defendants. | NOVEMBER 15, 2004 |

## EXHIBIT 3

## VOLUNTARY EXCLUSION AGREEMENT

This Voluntary Exclusion Agreement (Agreement) is entered into by and between the United States Department of Health and Human Services (HHS), through the Public Health Service (PHS) and Justin Radolf, M.D. (Respondent).

The purpose of this Agreement is to settle HHS' scientific misconduct findings against Respondent made by the PHS. Based on the report of an investigation conducted by the University of Connecticut Health Center (UCHC Report), Dr. Radolf's admissions and additional analysis conducted by ORI in its oversight review, the PHS finds that Respondent engaged in scientific misconduct in research supported by National Institutes of Health grant R01 AI29735-11 and incorporated false claims into a grant application entitled "Tick Inhibitors of Hemostasis: Novel Therapeutic Agents and an Anti-Tick Vaccine" to the United States Department of Agriculture (USDA). Respondent falsified and fabricated preliminary research data to falsely claim that the genes that he proposed to characterize were specifically expressed in the tick salivary gland. The respondent represented the products of control samples as positive tests for mRNA expression from different genes and presented data as positive for genes that had not been tested.

Specifically, the PHS finds that Respondent, Professor at UCHC's Center of Microbial Pathogenesis, falsified and fabricated data in January 2000 by altering the labeling of a figure included in a USDA grant application and by falsifying the text in both the USDA application and in an overlapping application to a state-sponsored program.

This incident of falsification and fabrication is significant because the data was the first direct evidence that the isolated clones represented genes expressed in tick salivary gland, and therefore represented proteins that could be targets of vaccine development to protect the hosts from tick-transmitted microbial diseases. The misinformation of the extent of the progress in this project had the potential to mislead grant reviewers and the scientific community about an area of research that could have led to the prevention of Rocky Mountain Spotted Fever and other tick-transmitted diseases.

The Respondent submitted the following admission to ORI:

> In January of 2000, I engaged in scientific misconduct involving research supported by the National Institutes of Health. The misconduct occurred during the preparation of grant proposals submitted to the United States Department of Agriculture and Connecticut Innovations, Inc. More specifically, I falsified and fabricated preliminary data by intentionally altering the labeling of an ethidium bromide-stained agarose gel purporting to demonstrate the expression of genes in the salivary glands of feeding *Dermacentor andersoni* ticks. In so doing, I misrepresented the products of control samples as positive tests for the presence of mRNAs derived from unrelated genes, and I fabricated data to show the expression of genes that, in fact, were not tested. The texts of the two proposals also contained inaccurate statements relating to these falsified and fabricated data. By inaccurately portraying the extent

Voluntary Exclusion Agreement
Page 2

of our progress in characterizing salivary gland proteins that might interfere with tick feeding, my actions would have misled the reviewers of the proposals into thinking that we were closer to the development of an anti-tick vaccine that we actually were.

Truthfulness in the recording, presentation, and reporting of data--the accuracy and reliability of the research record--is the foundation of all scientific research. By intentionally misrepresenting preliminary findings in the two grant proposals, my actions violated this basic precept, compromised my scientific integrity and placed my 20-year career as a biomedical researcher in jeopardy. My actions also could have compromised the integrity and careers of individuals with whom I work, individuals who place their trust in me and who look to me for scientific leadership. I take full and complete responsibility for this misconduct. I committed this wrongful act without prompting by other individuals and without the consent or knowledge of others. I am deeply remorseful for my behavior and offer my strongest assurance to the Office of Research Integrity that it will never recur.

The terms of this Agreement are as follows:

1. Respondent accepts the findings of scientific misconduct as set forth above and in the UCHC Report, which is attached as Attachment A and made a part of this Agreement, and agrees not to appeal the jurisdiction of the PHS or its findings.

2. Respondent agrees to exclude himself voluntarily from serving in any advisory capacity to the PHS including but not limited to service on any PHS advisory committee, board, and/or peer review committee, or as a consultant for a period of five (5) years beginning with the effective date of this Agreement.

3. Respondent agrees that for a period of five (5) years beginning on the effective date of this Agreement, any institution which submits an application for PHS support for a research project on which the Respondent's participation is proposed or which uses the Respondent in any capacity on PHS-supported research, or that submits a report of PHS-funded research in which the Respondent is involved, must concurrently submit a plan for supervision of the Respondent's duties to the funding agency for approval. The supervisory plan must be designed to ensure the scientific integrity of the Respondent's research contribution. A copy of the supervisory plan must also be submitted to ORI by the institution. Respondent agrees that he will not participate in any PHS-supported research until such a supervision plan is submitted to ORI.

4. For a period of five (5) years beginning on the effective date of this Agreement, Respondent agrees to ensure that any institution employing him submits, in conjunction with each application for PHS funds or report, manuscript, or abstract of PHS funded

Voluntary Exclusion Agreement
Page 3

research in which the Respondent is involved, a certification that the data provided by the Respondent are based on actual experiments or are otherwise legitimately derived, and that the data, procedures, and methodology are accurately reported in the application or report. The Respondent must ensure that the institution also sends a copy of the certification to ORI.

5. HHS and Respondent agree that Paragraphs 1, 2, 3, and 4 are material provisions of this Agreement. Pursuant to 45 C.F.R. § 76.305(c)(4), a violation of Paragraph 1, 2, 3, or 4 would constitute a violation of a material provision of this Agreement by Respondent. If the Respondent violates any of the material provisions, he voluntarily agrees to accept Government-wide debarment for one (1) year and to voluntarily exclude himself from serving in any advisory capacity to the PHS and special supervision for one (1) year in addition to the term stated in Paragraphs 2, 3, and 4, respectively.

6. This Agreement contains a complete description of the agreement between the parties. All material representations, understandings, and promises of the parties are contained in this Agreement. Any modifications must be set forth in writing and signed by all parties. Respondent represents that this Agreement is entered into voluntarily with knowledge of the events described and following consultation with his legal counsel.

7. In accordance with its normal procedures, ORI shall provide public notice of this Agreement, and Respondent's current employer will also be notified.

8. This Agreement shall become binding and effective only when it is signed by the PHS representative and by the Respondent and his counsel.

2/27/03
Date

Justin D. Radolf, M.D.
Respondent

2-27-2003
Date

Concurrence by Thomas W. Bucci
Counsel for Respondent

3-10-2003
Date

Richard H. Carmona, M.D., M.P.H., F.A.C.S.
VADM, USPHS
Surgeon General and
Acting Assistant Secretary for Health