UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JUSTIN D. RADOLF | CASE NO: 3:03CV242(MRK) |
| Plaintiff | LEAD/MAJOR DOCKET NO. |
| | CASE NO. 3:03CV672(MRK) |
| | MEMBER CASE |
| v. | |
| UNIVERSITY OF CONNECTICUT; ET AL | DECEMBER 17, 2004 |
| Defendants | |

## DEFENDANT'S REPLY TO PLAINTIFF'S MEMORANDUM IN OPPOSTION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

As a result of plaintiff's scientific misconduct, he was placed on academic probation. After the August 22, 2001 letter from Dr. Deckers, ORI independently exercised jurisdiction over Dr. Radolf's scientific misconduct. (SF 21)[1] Plaintiff fails to mention that when he voluntarily stepped down as Director of the Center for Microbial Pathogenesis in January 2002, Dr. Deckers made clear that Dr. Radolf's return as Director was dependent upon the outcome of the ORI investigation. (Deckers Tr. 21-22, 74-75; see also the companion case of Radolf v. University of Connecticut, et al., Member Case No. 3:03CV242 (MRK)). Thus, Dr. Radolf was on notice of the potential impact of any adverse finding or outcome by ORI. While plaintiff cites to a communication of January 13, 2002 from Dr. Deckers, he has completely taken this e-

---

[1] Defendant's Statement of Facts is referred to as "SF". The facts relative to this case are set forth in Defendant's Local Rule 56(a)(1) Statement previously submitted. Defendant this date has filed a Motion to Strike portions of plaintiff's Local Rule 56(a)(2) Statement of Facts and Affidavit of Justin Radolf.

mail out of context. That e-mail was in reference to Dr. Radolf stepping down as Director, and not in reference to the SRB's finding of scientific misconduct and Dr Deckers' actions on August 21, 2002.

As a result of ORI's actions, plaintiff entered into a Voluntary Exclusion Agreement which states that he agreed to "exclude himself voluntarily from serving in any advisory capacity to the PHS [Public Health Service] including but not limited to service on any advisory committee, board, and/or peer review committee, or as a consultant for a period of five (5) years beginning with the effective date of this Agreement." The MD/PhD Program of the School of Medicine is a PHS-funded activity. Thus, acting in any advisory way relative to that program by Dr. Radolf would be a clear violation of the ORI Voluntary Exclusion Agreement. (Deckers, TR. 110-115, 120).

Further, ORI put "in place a five-year plan of review of all grants, contract, etc. that Dr. Radolf was involved with as a result of research activity within his laboratory." (Deckers Tr. 107). ORI thus extended the plan Dr. Deckers had established in August 2001 as part of Dr. Radolf's academic probation for an additional five years. (Deckers Tr. 107-110). Plaintiff has failed to comprehend that he was on academic probation as of August 21, 2001. As such, he would not be aggressively promoted to be on academic committees within the University (Deckers Tr. 103-103, 113), and was ineligible for leadership positions (Berlin Tr. 55). The steps Dr. Deckers took in April 2003 were merely an extension of those already in place (Deckers Tr. 121-122) and were extended by virtue of the Voluntary Exclusion Agreement. In noting that Dr. Radolf was excluded from any academic or leadership position, Dr. Deckers was delineating precisely what was already understood (Deckers Tr. 123). While Dr. Deckers had

2

disciplinary sanctions available to him that he could have imposed and, indeed, was pressured to impose (Deckers Tr. 126-127, 150-152), he chose not to impose additional disciplinary sanctions and simply extended the conditions already in place in accordance with ORI's mandate (Deckers Tr. 126), laying it out in precise terms as he had learned was necessary with Dr. Radolf.

1.      **Property Interest**

Plaintiff argues that leadership positions are the core of a professor position and he is no longer a full professor. This is purely inaccurate. Plaintiff has admitted he is still a full professor with tenure, and has not experienced a reduction in salary or fringe benefits. (SF 63). Plaintiff has not been demoted. Moreover, he has admitted that a tenured faculty member is not entitled to sit on committees. (SF 44). He has admitted that it is possible a tenured faculty member would not be given leadership positions or participate in student mentoring programs or be given committee assignments. (SF 45). He has also admitted he still sits on other committee in which he previously did not have a leadership role (SF 46). Finally, he has admitted he has not approached Drs. Deckers or Berlin for committee assignments (SF41), and even declined to sit on the UCHC General Clinical Research Center Scientific Advisory Committee (SF47). Finally, he has admitted leadership positions are assignments made by appropriate deans, directors, and department heads (SF14) and thus discretionary. There is no entitlement to these positions. It must be pointed out that the ByLaws of the Board of Trustees of the University specifically state that "Academic tenure does not confer upon any staff member the right to continued assignment to administrative responsibilities." Article XV. C. fn 4. See Exhibit 3. Thus, Dr. Radolf had no right to continued assignment to any of these administrative tasks.

It is disingenuous for plaintiff to now argue that defendant "stripped the plaintiff of the essence of is position as a professor at UCHC." (Pltf's Mem. at p.16)  In short, plaintiff has cited to nothing which establishes that he has a "legitimate claim of entitlement" or right to sit on committees or be a mentor or hold leadership positions.  See Mitchell v. Vanderbilt University, 2004 WL 2534237 (6th Cir. 2004)(attached), in which Mitchell was removed as a mentor of the MD/PhD. and Ph.D. programs and not allowed to work with a new MD/PhD. student whose research he claimed could have helped him in an application for an NIH grant.  The Court stated that these actions did not amount to adverse employment actions.  As to the requirement that all NIH grant applications submitted by Mitchell be reviewed by the Chairman of Mitchell's Department, the Court stated that "[b]ecause of Vanderbilt's concerns about Mitchell's history of hurriedly prepared grant applications, the internal submission requirement is properly considered good institutional administration rather than a materially adverse employment action."  Thus, contrary to Dr. Radolf's claims, the measures extended by Dr. Deckers did not strip him of anything and were not disciplinary actions, but rather good institutional administration.

The case law cited by defendant in his Memorandum in Support of Motion for Summary Judgment show that plaintiff does not have a constitutionally protected property interest.  While he argues he has a property interest in his position as professor, what he is actually arguing about is the benefits of that position in the nature of assignments, not the position itself.  See Kirschenbaum v. Northwestern University, No. 1-98-3059, 1st District April 12, 2000 (attached to defendant's Memorandum in Support of Motion for Summary Judgment); Janos v. University of Washington, 851 P.2d 683 (Wash. App. 1993), and other cases cited at p. 5-11 of defendant's Memorandum.

The cases cited by plaintiff at p. 12 footnote and p. 15-16 of his Memorandum are not applicable to this case as all involved demotions to a lower rank. Here, plaintiff has not been demoted but rather has maintained his rank as a full professors. See also Deckers Tr. 28-29 which explains the differences between a professor and an assistance professor. Nor can plaintiff argue that he has been demoted to "a position of vastly diminished responsibilities" without cause as in the DeKalb case he cites, particularly where he has not sought out new committee assignment, has even turned down a committee assignment, and has not attempted to mentor more than the single graduate student he was mentoring in 2001 before the SRB finding. (SF 41, 47, 64). See also Mitchell, supra.[2]

At p. 18 of his Memorandum, plaintiff goes on at length about the godlike position of a professor in the midst of which he cites only one line worthy of note: "good professors are expected to be contributors to the life of the university." It is difficult to understand how Dr. Radolf's commission of scientific misconduct by fabricating data to the federal government contributed to the life of the university. See Exhibit 2. See also Pugel v. Board of Trustees of University of Illinois, 2004 WL 1753543 (7th Cir. 2004) *7 ("the public presentation of false data by a graduate-level student affiliated with the University has significant ramifications on the discipline and rigor of the university's intellectual enterprise and, as a result, on the University's reputation in the broader academic and scientific community."). "[A] mentor has to be a medical professional and an impeccable medical professional. Honesty is one of the characteristics of a medical professional. Dr. Radolf admitted research misconduct." (Deckers

---

[2] The quotation on p. 18 of plaintiff's Memorandum was published in Northeastern University Magazine and is actually taken from a critique written by a professor of philosophy and religion at Northeastern University in response to an essay written by a fellow professor. Further, Abdu'l–Baha, quoted in the footnote of the same page, was the son of the founder of the Baha'i' Faith and the interpreter of his father's statements as a "God Messenger." Defendant questions the weight to be accorded these two supposed "legal authorities" as determinative of the legal issue at hand.

Tr. 127).[3]

**2.    Due Process Protections**

Since plaintiff did not have a legitimate claim of entitlement or right to discretionary leadership or mentor positions, was already under academic probation which included these considerations, and voluntarily agreed to the restrictions imposed by ORI which extended the academic probation plan of review already imposed by Dr. Deckers, plaintiff was not entitled to a hearing.

Further, all of the cases cited by plaintiff in his Memorandum at p. 21-28 in support of his argument involved suspensions without pay and/or demotions in actual rank and/or terminations and are inapplicable to the matter at hand. Again, it must be pointed out that this was not a termination or demotion or suspension, i.e. an action that impacted an employee's continued employment. Plaintiff remains employed at the rank of a full professor with tenure. He is still free to teach, engage in outside work, perform research, apply for grants, make presentations, etc. (SF 46, 48, 49, 60-63). Plaintiff has not cited a single case analogous to the present involving retention of rank and continued employment but rather a limitation on a certain class of potential assignments.

Further, plaintiff never grieved the actions of Dr. Deckers of April 2003. (SF 37). "[T]he Supreme Court's holding in Patsy does not apply in a procedural due process suit if plaintiff failed to avail himself or herself of the right to be heard, which is the very right being

---

[3] Plaintiff states at p. 20 of his Memorandum that "it was Deckers who explicitly promised the plaintiff that the ORI investigation would not result in any further punitive measures" and yet provides no support for this remark. Plaintiff glosses over that the ORI Voluntary Exclusion Agreement brought his scientific misconduct to a new level, from a local to a national and international level (Deckers Tr. 125-126) and imposed a mandate upon the University. At no time did Dr. Radolf consult with the University prior to entering into this Agreement despite the fact that it imposes onerous responsibilities upon the University relative to certifications to funding agencies. (SF26).

asserted." Alba v. Ansonia Board of Education, et al, 999 F. Supp. 687, 690 (D. Conn. 1998); Aronson v. Hall, 707 F.2d 693, 694 (2d Cir. 1983) (per curiam)(affirming a district court's dismissal of a plaintiff's procedural due process claim because "having chosen not to pursue available administrative review, [plaintiff] is hardly in a position to claim that such review denied him due process.")  No where has plaintiff alleged how the grievance procedures set forth in the ByLaws of the University were inadequate.  Alba, 999 F. Supp. at 692; Narumanchi v. Board of Trustees of the Connecticut State University, 850 F. 2d 70, 72 (2d Cir. 1988); Cotton v. Jackson, 216 F.3d 1328, 1331 (11th Cir. 2000)("This rule (that a section 1983 claim is not stated unless inadequate state procedures exist to remedy an alleged procedural deprivation) recognizes that the state must have an opportunity to 'remedy the procedural failings of its subdivisions and agencies in the appropriate fora, - agencies, review boards, and state courts' before being subject to a claim alleging a procedural due process violation.").  This is not an exhaustion requirement. See McKinney v. Pate, 20 F.3d 1550, 1564 n.20 (11th Cir. 1994)(en banc).  "Instead, this directive is a recognition that procedural due process violations do not even exist unless no adequate state remedies are available."  Cotton, 216 F.3d at 1331.

In sum, plaintiff does not have a constitutionally protected property interest.  Nor has he been denied due process.

### 3. **Substantive Due Process**

In order to state a substantive due process claim premised on a deprivation of property, plaintiff must establish that he was deprived of a valid property interest in a constitutionally-protected benefit.  Kaluczky v. White Plains, 57 F.3d 202, 211 (2d Cir. 1995).  As previously discussed, plaintiff does not have a protected property interest in the "benefits of tenure" as he

7

claims. Contrary to his argument on p. 29 of his Memorandum, he has not been terminated from his position for cause. He is still a tenured, full professor at the University; that is, he maintains continued employment.

Plaintiff argues that he has a property interest in being free from further punishment which is based upon "explicit promises" by Dr Deckers allegedly made prior to ORI exercising jurisdiction over Dr. Radolf's scientific misconduct. The existence of a property interest, however, must be determined by reference to state law. Bishop v. Wood, 426 U.S. 341, 344 (1976); Board of Regents v. Roth, 408 U.S. 564, 577 (1972). There is no state law support provided for the existence of such an interest by Dr. Radolf. Further, plaintiff has no basis upon which to establish he had "a legitimate claim of entitlement" to such an interest. Roth, 408 U.S. at 577. Plaintiff's "expectations" (SF 42) do not create such a property interest. Roth, 408 U.S. at 577. See also Radolf Tr. 191("you're anticipating that you will be requested to serve in a variety of capacities."). Finally, as previously explained, Dr. Deckers did not impose further punishments on Dr. Radolf.

There is no evidence to suggest that Dr. Deckers' actions in following the requirements of the Voluntary Exclusion Agreement which Dr. Radolf entered into were "arbitrary, conscience-shocking, or outrageous." See McDonald v. Sweetland, Civ. No. 3:02CV1040(MRK)(D. Conn. 2004)(attached to defendant's Memorandum in Support of Motion for Summary Judgment).[4] Plaintiff claims his exclusion from PHS-funded activity is "self-enforcing". Once again, no good deed goes unpunished. At worst, Dr. Deckers' actions in attempting to protect

---

[4] When asked at deposition whether it was his contention that the initial academic probation period should not have been extended to coincide with the Voluntary Exclusion Agreement's five-year period, Dr. Radolf responded "No". See Radolf Tr. 328-239.

Dr. Radolf (Deckers Tr. 126-127, 150-152) were incorrect or misguided but did not rise to the level of a substantive due process violation.

**4.     Qualified Immunity**

While plaintiff may argue that his possession of a constitutionally protected property interest in the position of professor has been clearly established, this argument merely obfuscates the real issue.  Plaintiff still possesses his professorship. Instead, plaintiff is really arguing for a protected property interest in particular discretionary assignments which are not entitlements. Defendant submits such a property interest, in the particularized sense, has not been established. Indeed, case law establishes no such property right exists.  See Defendant's Memorandum in Support of Motion for Summary Judgment pp. 3-13 and 26-27.[5]  Plaintiff has cited no authority clearly holding that the Fourteenth Amendment requires a predeprivation hearing for the administrative restriction or removal of noneconomic benefits.

**CONCLUSION**

For these reasons, as well as those set forth in Defendant's Memorandum in Support of Motion for Summary Judgment, defendant respectfully submits its Motion for Summary Judgment should be granted.

---

[5] Defendant notes that plaintiff has not briefed any liberty interest claim in his First Cause of Action or addressed defendant's arguments.  Moreover plaintiff has not briefed his Second Cause of Action or addressed defendant's arguments.  Defendant submits said claims should be dismissed as abandoned.

RESPECTFULLY SUBMITTED,

DEFENDANT
UNIVERSITY OF CONNECTICUT, ET AL


RICHARD BLUMENTHAL
ATTORNEY GENERAL



/s/ Jane D. Comerford
JANE D. COMERFORD (Ct 06328)
ASSISTANT ATTORNEY GENERAL
UNIVERSITY OF CONNECTICUT
  HEALTH CENTER
263 Farmington Avenue
Farmington, CT 06030-3803
Tel. (860) 679-1114
Fax (860) 679-1997
E-Mail-Comerford@ADP.UCHC.EDU


## CERTIFICATION

This is to certify that on this 17th day of December 2004, the foregoing was mailed to counsel of record as follows:

Thomas W. Bucci, Esq.
Willinger, Willinger & Bucci, PC
855 Main Street
Bridgeport, CT 06604


/s/ Jane D. Comerford
Jane D. Comerford
Assistant Attorney General